UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

                              Case No. 2:22-cr-20629

DARESE HAILE,                     Sean F. Cox
                                   United States District Court Judge

     Defendant.
_____/

## OPINION AND ORDER
## DENYING DEFENDANT'S MOTIONS TO SUPPRESS (ECF No. 24 and 25)

In this criminal case, Defendant is charged with four counts of carjacking, aiding and abetting, in violation of 18 U.S.C. §§2119 and 2.  Currently before the Court are two of Defendant's motions to suppress. (ECF No. 24 and 25). The Court conducted a hearing on June 16, 2023. For the reasons set forth below the Court shall DENY Defendant's Motions (ECF No. 24 and 25) without an evidentiary hearing.

## BACKGROUND

On November 22, 2022, a federal grand jury returned an indictment charging Darese Haile ("Defendant") with four counts of carjacking, aiding and abetting, in violation of 18 U.S.C. §§2119 and 2. (ECF No. 13). The four carjackings occurred between May 12, 2022, and October 3, 2022. All four carjackings involved Lyft drivers called for a ride and carjacked upon arrival.

During the fourth carjacking, on October 3, 2022, the victim ("AV-4"), a Lyft driver, responded to a ride request from an individual listed as "Travis" on Wexford Street in Detroit, MI, at approximately 3:18 A.M. (ECF No. 31, PageID.322). AV-4 reported that, upon arrival, two

black males with masks approached his vehicle. (*Id.*) One of the men was wearing a blue surgical mask around his chin and not covering his face. (*Id.*) Only after AV-4 asked the suspect with the blue surgical mask if he was "Travis" did the suspect pull the surgical mask up over his face. (*Id.*, PageID.322–23). The suspect in the blue mask stayed outside the vehicle. (*Id.*)

The other suspect got into the vehicle and held a gun to AV-4's head and told him to put the car in park and put his hands on the wheel. (*Id.*, PageID.322). The suspect with the gun ordered AV-4 to take off his clothes and threatened to shoot him. (*Id.*) The suspect in the blue surgical mask then opened the driver's side door, went through AV-4's pockets, and pulled him out of the car. (*Id.*) The suspects stole AV-4's vehicle along with his clothing, phone, and wallet. (*Id.*, PageID.321).

Later that day, Detroit Police ("DPD") interviewed AV-4. (*Id.*, PageID.322). AV-4 described two masked, black males as suspects in the carjacking. (*Id.*) Three days later, on October 6, 2022, ATF agents interviewed AV-4. (*Id.*, PageID.322). During that interview, AV-4 stated that when he arrived at the pickup location, one of the suspects was wearing a blue surgical mask around his chin. (*Id.*, PageID.322). AV-4 stated that when he asked if the suspect was "Travis," the suspect pulled the mask up over his face. (*Id.*, PageID.322–23).

Five days later, on October 11, 2022, ATF agents presented AV-4 with a six-person photo array. The photo array was in black-and-white, with photos numbered one through six. (ECF No. 24-4, PageID.139). The photos had no other identifiers. (*Id.*) Before proceeding, an ATF agent informed AV-4 that the suspect may or may not be present in the photographs and that the suspect may not appear exactly as he did on the date of the incident. (ECF No. 31-2; ECF No. 31, PageID.323). After looking at the photo array "for approximately 30 seconds" AV-4 stated that he did not recognize anyone in the photos. (ECF No. 31-2). The ATF agent noticed AV-4 looked

nervous and asked AV-4 to "take a couple of breaths to calm down before examining the photograph array again". (*Id.*) Approximately two minutes later, the victim identified Defendant as the suspect in the blue surgical mask. (*Id.*)

On November 22, 2022, a federal grand jury returned an indictment charging Defendant with four counts of carjacking, aiding and abetting, in violation of 18 U.S.C. §§2119 and 2. (ECF No. 13).

On April 7, 2023, Defendant filed two motions to suppress: (1) a "Motion to Suppress All Evidence of Photo Line Up and to Exclude Identification Testimony" (ECF No. 24); and (2) a "Motion to Suppress Evidence Seized Beyond the Scope of the Search Warrant." (ECF No. 25). The Government filed its responses to the motions on May 12, 2023. (ECF No. 36 and 37).

## ANALYSIS

### I.   Motion to Suppress All Evidence of Photo Line Up and Exclude Identification Testimony (ECF No. 24)

Defendant argues that the photo lineup was unreliable and suggestive in violation of Defendant's Due Process rights, and that all evidence of the photo lineup should be suppressed. (ECF No. 24, PageID.115–17). Defendant also requests an evidentiary hearing. (*Id.*) The Government disagrees. The Government argues that the photo lineup was reliable, not at all suggestive, and that an evidentiary hearing is unnecessary in this case. (ECF No. 31, PageID.330, 332, 336).

To determine the validity of a pretrial identification, courts apply a two-step analysis: (1) whether the procedure used in the identification was unduly suggestive and (2) if it was, whether, using the totality of the circumstances, the identification was reliable. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994).

First, the defendant must demonstrate that the procedure used in the identification was unduly suggestive. A lineup is only considered unduly suggestive when it "steer[s] the witness to one suspect or another, independent of the witness's honest recollection" or makes it "all but inevitable" that a witness would identify the defendant. *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001) (citing *United States v. Russell*, 532 F.2d 1063, 1068 (6th Cir. 1976); *Foster v. California*, 394 U.S. 440, 443 (1969)).

Second, if the procedure is found to be unduly suggestive, the Court then evaluates the totality of the circumstances to determine whether the identification was reliable. *Ledbetter*, 35 F.3d at 1071. The reliability factors include:

> (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199–200. If the identification is subsequently found to be unreliable and unduly suggestive, it creates a substantial likelihood for misidentification and is prohibited from being admitted at trial by the Due Process Clause of the Fifth Amendment. *Id.* at 198; *Simmons v. United States*, 390 U.S. 377, 384 (1968).

Here, ATF agents investigating the carjackings conducted the identification with AV-4. (ECF No. 31-2). The agents presented AV-4 with a six-person, black-and-white photo array. (ECF No. 24-4, PageID.139). The photos were numbered one through six and had no identifiers. (*Id.*) Before proceeding, an ATF agent informed AV-4 that the suspect may or may not be present in the photographs and that the suspect may not appear exactly as they did on the date of the incident. (ECF No. 31-2; ECF No. 31, PageID.323). After looking at the photo array "for approximately 30 seconds," AV-4 stated that he did not recognize anyone in the photos. (ECF No. 31-2). The ATF

agent noticed that AV-4 looked nervous, so he asked AV-4 to "take a couple of breaths to calm down before examining the photograph array again". (*Id.*) Approximately two minutes later, the victim positively identified Defendant in the photo array. (*Id.*)

Defendant argues that the ATF agent "steered" the witness when the agent told AV-4 to "calm down" and examine the array again, after which AV-4 identified Defendant. (ECF No. 36, Page ID.378). Defendant further argues that whether this instruction in fact "steered" AV-4 and was "unduly suggestive" can only be resolved via an evidentiary hearing. However, Defendant failed to provide a list of witnesses to the Court.

Even if an evidentiary hearing were held, it is unlikely the Court would find the procedures used in this photo lineup were "unduly coercive." Nothing about the agent's instruction to "calm down" appears to have "steered" AV-4 to identify Defendant "independent of [AV-4's] honest recollection" or made it "all but inevitable" that AV-4 would identify Defendant. *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001) (citations omitted).

Defendant also lists several other factors that could combine with this potential "steering" to increase the likelihood that the photo lineup was unduly suggestive:

> (1) Agents did not record the identification;
> (2) Agents did not conduct a blind identification;
> (3) The photos were in black-and-white;
> (4) There were witness inconsistencies;
> (5) Lapse of time;
> (6) Lack of witness opportunity to view the perpetrator; and
> (7) It was a cross-racial identification.

(ECF No. 36, PageID.379–380).

The first two factors fall under Defendant's argument that it could be considered "unduly suggestive" that agents failed to follow "proper modern identification" procedures. (ECF No. 24, PageID.122). These "modern" procedures involve recording the identification and conducting

5

photo identifications in which the agents conducting the identification do not know which photo contains the suspect. (*Id.*, PageID.122–123). However, Defendant has not cited any binding authority that mandates such identification procedures or shown that failing to follow them constitutes an unduly suggestive identification procedure.

The third factor, that the photo lineup was in black-and-white, has been found by the Sixth Circuit to be valid and not unduly suggestive. *United States v. Reamey*, 132 F. App'x 613, 615 (6th Cir. 2005); *United States v. McClinton*, 972 F.2d 349 (6th Cir. 1992).

Factors four through six are equally without merit. Here, Defendant appears to attempt to skip to the second step of the analysis. These factors are identical to the *Ledbetter* reliability factors which are only considered once completing the first step of the analysis—whether the photo lineup was "unduly suggestive."

Finally, Defendant fails to point to any binding case law to support his concerns regarding the final factor, that it was a cross-racial identification (i.e. a white victim identifying a black suspect).

Defendant concedes that none of these factors or procedures are per se impermissible but argues that when combined these factors create a high risk of being unduly coercive.

Absent any evidence of unduly suggestive identification procedures in this case, there is no reason for this Court to proceed to an analysis of the second step or to find this identification to be invalid. This Court shall thus DENY Defendant's "Motion to Suppress All Evidence of Photo Line Up and to Exclude Identification Testimony," without an evidentiary hearing.

## II.   Motion to Suppress Evidence Seized Beyond the Scope of the Search Warrant (ECF No. 25)

Defendant also filed a "Motion to Suppress Evidence Seized Beyond the Scope of the Search Warrant." (ECF No. 25). In that motion, Defendant argues that police violated his Fourth

Amendment rights by executing parts of two warrants after the deadline in the warrants, thereby exceeding the warrants' scope. (ECF No. 25, PageID.144). The Government disagrees, arguing that Defendant misinterprets what constitutes the execution of these warrants. (ECF No. 32, PageID.357).

The Fourth Amendment generally requires that police officers obtain a warrant before acquiring cellphone location data. *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018). A warrant must describe, with particularity "the place to be searched and the persons or things to be seized." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). If a warrant is valid, but the searching officers exceed the warrant's scope, the good faith exception may still bar exclusion of evidence. *See United States v. Biles*, 100 F. App'x 484, 494 (6th Cir. 2004).

### a.   "-04" Warrant – Cell Site Simulator

The first warrant, (referred to as the "-04" warrant based on the digits of the case number) was issued on October 20, 2022. (ECF No. 25-2) (filed under seal). The -04 warrant stated that it must be executed on or before November 3, 2022—i.e. within 14 days. The warrant authorized agents to use a cell site simulator to locate Defendant's phone "for a period of (30) days, during all times of the day and night". (*Id.*, PageID.174). Specifically, it authorized agents to "collect[] and examin[e]" signals emitted by the device during that period. (*Id.*)

The warrant was first executed on October 25, 2022. (ECF No. 25-3). This falls within the 14-day execution window. The warrant return states that the warrant was also "executed"—or that the simulator was used again—on November 15, 2022. (*Id.*) Defendant believes this second use, or "execution" of the warrant constitutes exceeding the scope of the warrant. Further, Defendant interprets the 30-day window as requiring *continuous* use of the simulator, and any second use of the simulator as a new execution of the warrant. (ECF No. 25, PageID.145). This is incorrect.

The warrant is considered "executed" on the date that the warrant is served on the electronic service provider. *See United States v. Farrad*, 895 F. 3d 859, 890 & n.23 (6th Cir. 2018). Similarly, a warrant to search a cellular phone is considered "executed" when the phone is seized, not when the data is copied or analyzed. *United States v. Cleveland*, 907 F.3d 423, 431 (6th Cir. 2018).

Here, the warrant was issued on October 20, 2022. (ECF No. 25-2). From that point, the agents had 30 days—until November 20, 2022—to collect and examine information from the simulator. Nowhere in the warrant does it require use of the simulator be continuous. The second use of the simulator was November 15, 2022—well within that window. Using the simulator during that 30-day window clearly falls within the scope of the warrant.

Even if Defendant's interpretation is correct and this second use of the simulator exceeded the scope of the warrant, the good faith exception to suppression established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applies.

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). If the evidence was "obtained in objectively reasonable reliance" on the "subsequently invalided search warrant," however, it should not be suppressed. *United States v. Leon*, 468 U.S. at 922.

"In *Leon*, the Supreme Court held that the exclusionary rule 'should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996) (quoting *Leon*, 468 U.S. at 905).

The Sixth Circuit has held that there are four specific situations where the *Leon* good-faith-reliance exception is inappropriate: "(1) where the affidavit contains information the affiant knows or should have known to be false; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more than a "bare bones" affidavit; (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

Here, the Government argues that even if the warrant was not valid, the good-faith exception to suppression should apply. (ECF No. 32, PageID.359).  The Court agrees and finds that none of the four exceptions listed in *Leon* apply here.

First, Defendant does not claim that any of the affidavits related to the -04 warrant contain any information that agents knew or should have known to be false. Second, the affidavits contained enough information for the magistrate to make the determination to issue the warrant. Third, the affidavit was not so conclusory as to constitute a "bare bones" affidavit. Finally, the -04 warrant was not so facially deficient that it could not be presumed valid.

Even if the warrant at issue here did not meet the threshold of probable cause, it satisfies the "less demanding showing" required under the good-faith exception. *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). The good-faith exception applies here.

The Court shall thus DENY the Motion to Suppress as to the -04 warrant without an evidentiary hearing.

**b.   "-05 Warrant" – Historical and Prospective Location Information from T-Mobile**

The second warrant, (referred to as the "-05" warrant based on the digits of the case number) was also issued on October 20, 2022. (ECF No. 25-4, PageID.207) (filed under seal). The -05 warrant stated that it must be executed on or before November 3, 2022—i.e. within 14 days of the warrant's issuance. (ECF No. 25-4). This warrant authorized the seizure of both historical and prospective location information from T-Mobile. (*Id.*) Specifically, it authorized agents to seize *historical* information including "[c]all detail records with cell site location information for voice, SMS, MMS, and data connections per call measurement data since May 11, 2022," (ECF No. 25-4, PageID.205) as well as *prospective* location information including "all precision location information, E-911 Phase II data, GPA data, latitude-longitude data… and real time cell site information for 30 days, beginning from the date the warrant was issued." (ECF No. 25-4, PageID.204).

Here, the warrant was issued on October 20, 2022. (ECF No. 25-4, PageID.207). The first warrant return states that the warrant was executed on October 21, 2022. (ECF No. 25-5). A second, unfiled warrant return stated that the warrant was executed on November 29, 2022. (ECF No. 32-2).

Defendant states the warrant should be suppressed for three reasons. Defendant first argues generally that any evidence obtained after the 14-day warrant execution deadline falls outside the scope of the warrant and should thus be suppressed. (ECF No. 37, PageID.388). Defendant then cites two problems specific to the second warrant return. The second return's execution date, November 29, 2022, falls outside both the 14-day window required to execute the warrant and the 30-day window to collect prospective cell location information. (ECF No. 25, PageID.146–147).

Defendant argues that this second execution thus falls entirely outside the scope of the warrant, and any items seized as a result should be suppressed. (*Id.*) All three arguments fail.

First, as explained above relating to the -04 warrant, a warrant is considered "executed" on the date that the warrant is served on the electronic service provider. *See United States v. Farrad*, 895 F. 3d 859, 890 & n.23 (6th Cir. 2018). Here, the first warrant return states that the warrant was executed on October 21, 2022—well within the 14-day window.

Defendant appears to take issue with evidence *obtained* after that 14-day execution deadline. However, the warrant included not just historical data, but *prospective* data, to be obtained "for 30 days, beginning from the date the warrant was issued." (ECF No. 25-4, PageID.204). Receiving evidence pursuant to a warrant is not equivalent to a new execution of the warrant. *See United States v. Allen*, No.16-10141-EFM, 2018 WL 1726349, at *9 (D. Kan. Apr 10, 2018). Agents received prospective phone location data between October 21, 2022, and November 16, 2022—well within the 30-day window. (ECF No. 32-2). Providing the requested information from within that 30-day window clearly falls within the scope of the warrant.

As to the second warrant return, as the government states, this return was a mistake that was never filed. Further, agents filed a supplemental report addressing the error. (ECF No. 32-2). The ATF agent who wrote the second return was unaware that a return had already been entered, and wrote the second return duplicating the first return, but incorrectly stating the execution date.[1] Further, Defendant does not state how he was prejudiced by this second, unfiled return.  An error

---

[1] There is a discrepancy in the supplemental report and the second, unfiled return. The supplemental report states that the date of the execution was incorrectly written as October 29, 2022. However, the actual return date is listed as November 29, 2022. Elsewhere in the report, the dates of the seizure are listed as "October 29, 2022-November 16, 2022." The Court assumes this is the only supplemental report regardless of the discrepancy in the dates, and that the second return was in fact the mistaken return referred to in the report.

in a warrant return does not support suppressing evidence where the defendant was not prejudiced by it. *See United States v. Charles*, 138 F.3d 257, 262 (6th Cir. 1998).

The Court shall thus DENY the Motion to Suppress as to the -05 warrant.

**CONCLUSION**

For the reasons set forth above, IT IS ORDERED that Defendant's Motions to Suppress (ECF No. 24 and 25) are DENIED.

**IT IS SO ORDERED.**


Dated:  June 22, 2023                          s/Sean F. Cox
                                                             Sean F. Cox
                                                             U. S. District Judge


I hereby certify that on June 22, 2023, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                                             s/J. McCoy
                                                             Case Manager